**COPY**

## IN THE COURT OF COMMON PLEAS
## MEDINA COUNTY, OHIO

COMMON PLEAS COURT

2018 JAN 11  PM 12: 38

FILED
DAVID B. WADSWORTH

| | |
|---|---|
| **TIM CARSON**<br>3061 Marla Court<br>Medina, OH 44256<br>On behalf of himself and all those<br>similarly situated<br><br>And<br><br>**GABRIELLE GILLOTA**<br>3061 Marla Court<br>Medina, OH 44256<br>On behalf of herself and all those<br>similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>**STATE FARM FIRE AND<br>CASUALTY COMPANY**<br>One State Farm Plaza<br>Bloomington, IL 61710<br><br>And<br><br>**AMERICAN CONSULTING, INC.<br>D/B/A AMERICAN<br>STRUCTUREPOINT, INC.**<br>2550 Corporate Exchange Drive<br>Suite 300<br>Columbus, OH 43231<br><br>**ALSO SERVE STATUTORY<br>AGENT:**<br><br>Cogency Global, Inc.<br>3958-D Brown Park Drive<br>Hilliard, Ohio 430226<br><br>And | CASE NO.: **18CIV0041**<br><br>JUDGE    CHRISTOPHER J. COLLIER, JUDGE<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

Answer
date 2/20

Removal
date 2/20

COPY

| American Consulting, Inc. | ) |
| 7260 Shadeland Station | ) |
| Indianapolis, IN 46256 | ) |
| | ) |
| Defendants. | ) |
| | ) |

Now come Plaintiffs, Tim Carson (""Carson") and Gabrielle Gillota ("Gillota") (also referred to herein at times collectively as ("Plaintiffs"), by and through their undersigned counsel, for their Class Action Complaint against Defendants State Farm Fire and Casualty Company ("State Farm") and American Consulting, Inc. d/b/a American Structurepoint, Inc. ("ASI"), (also referred to herein at times collectively as "Defendants") for breach of contract, bad faith, and unjust enrichment, and as grounds therefore allege as follows:

## THE PARTIES AND VENUE

1.      This is a claim for, among other things, breach of contract, bad faith, and unjust enrichment and monetary relief for damages exceeding $25,000 exclusive of all interest, costs, and attorney's fees.

2.      Plaintiffs are Ohio residents who own the property located at 3061 Marla Court, Medina, OH 44256 (hereinafter referred to as "Property" or "Premises"). Said Property is a residential structure wherein both Plaintiffs reside. Both Carson and Gillota are "Named Insureds" under the Policy of Insurance issued by State Farm.

3.      The putative Class Members are citizens of the State of Ohio who have (or had) a Homeowner's policy of insurance with Defendant State Farm.

4.      Defendant, State Farm, is a foreign corporation that is licensed to conduct business in the State of Ohio, and is in the business of selling homeowners insurance policies which include, without limitation, property r o o f damage caused by wind and other associated

2

COPY

coverages to Ohio homeowners and is otherwise *sui juris* for purposes of this action.

5.      For purposes of this direct action against Defendant State Farm, State Farm is deemed a citizen of the State of Ohio.[1]

6.      Defendant, ASI", is a foreign corporation that is licensed to conduct business in the State of Ohio, and is in the business of engineering and architectural services, and is otherwise *sui juris* for purposes of this action.

7.      At all material times and during the acts alleged herein, Defendant State Farm acted by and through its officers, agents, and employees including, without limitation, Defendant ASI and Mr. Tom Barnes, who was acting within the purpose and scope of his agency or employment, and whose acts and conduct alleged herein were known to, authorized, and ratified by Defendant State Farm.

8.      Venue is appropriate in the Medina County Court of Common Pleas because the cause of action accrued in Medina County, Ohio as that is the location of the subject Property, and since payments for insurance premiums related to the subject Policy were made by Plaintiffs in Medina County.

9.      This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA") local controversy and home state exception provisions, 28 U.S.C. § 1332(d)(4)(A) and 28 U.S.C. § 1332(d)(4)(B), respectively, because: (1) more than two-thirds of the proposed Class Members are citizens of the State of Ohio, (2) the primary Defendant, State Farm, against whom significant relief is sought is, as a matter of law, deemed a citizen of the State of Ohio, (3) the principal damages/injuries resulting from the conduct alleged herein were incurred in the State

---

[1] See 28 U.S.C. § 1332(c)(1)

COPY

of Ohio, and (4) no other class action asserting the same or similar factual allegations against any of the Defendants herein has been filed within the three years prior to the present action.

## GENERAL ALLEGATIONS AND THE INSURANCE POLICY

10.    Defendant State Farm issued the Policy to Plaintiffs which provides insurance coverage related to the Premises, as shown in the policy terms, conditions, declarations, and endorsements incorporated herein as if fully rewritten. This policy is commonly known as a homeowners' insurance policy.

11.    The said Policy provides insurance coverage for, amongst other things, property damage related to accidental direct physical loss to the Property.

12.    The relevant policy provisions are as follows:

> "*This policy is one of the <u>broadest forms available today</u>, and provides you with <u>outstanding value for your insurance dollars</u>. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.*"[2]

***

### SECTION I – COVERAGES

### COVERAGE A – DWELLING

1.    **Dwelling**. We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

2.    Dwelling includes:
        3.
    a.    Structures attached to the dwelling;

    b.    Materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration, or repair of the dwelling or other structures on the **residence premises**;

    c.    Foundation, floor slab and footings supporting the dwelling; and

---

[2] Emphasis added.

4

COPY

    d.    Wall-to-wall carpeting attached to the dwelling.

## SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION 1- LOSSES NOT INSURED**.

***

## SECTION I – LOSS SETTLEMENT

Only the Loss settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A – DWELLING

**A1-Replacement Cost Loss Settlement – Similar Construction**

    a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

    (1)    Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

    (2)    When the repair or replacement is completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

    (3)    To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (4)    We will not pay for increased costs resulting from the enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, except as provided under **Option**

COPY

**OL – Building Ordinance or Law Coverage**.

\*\*\*

**A2 – Replacement Cost Loss Settlement – Common Construction**

    a.    We will pay the costs to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

    (1)    We will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost of repair or replace obsolete, antique, or custom construction with like kind and quality;

    (2)    Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

    (3)    When the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

    (4)    To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (5)    We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

\*\*\*

## SECTION I – CONDITIONS

**Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

A.  Repair or replace any part to restore the pair or set to its value before the loss; or

COPY

B. Pay the difference between the depreciated value of the property before and after the loss.

## SECTION I AND II – CONDITIONS

**Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

13.    There are no losses claimed by Plaintiffs that are <u>not</u> insured as defined under the policy related to Plaintiffs' claim(s).

14.    Plaintiffs are and have been in full compliance with all the terms and conditions of the Policy.

15.    Plaintiffs have used all reasonable means to reduce and/or avert their losses, but Plaintiffs' efforts to mitigate their damages have been partially and/or entirely prevented by the actions and/or omissions of the Defendant.

16.    State Farm has an affirmative duty to treat its insureds in a good faith manner.

17.    State Farm has an affirmative duty to act in good faith in the handling, processing, evaluation, and adjusting of Plaintiffs' and its insureds' claims.

18.    State Farm is required under Ohio law and the policy of insurance to comply with Ohio Administrative Code § 3901-1-54 Unfair Property/Casualty Claims Settlement Practices Act ("Act"). While failure to comply with the Act does not create a private cause of action, it does present evidence of failing to comply with good, acceptable, and industry-wide claims practices and standards and, therefore, is evidence of bad faith. Indeed, the Act is intended to set forth minimum standards for the investigation and disposition of insurance claims. Therefore, the rules set forth in the Act may provide evidence of industry practice relevant to construing State Farm's contractual obligations during the claims process. *See, Dolecki v. Nationwide Mut. Ins. Co.*, 2005-

COPY

Ohio-1061, 2005 WL 578648, at *4 (Ohio Ct. App. 2005).

19.    Pursuant to § 3901-1-54(I)(1)(b) of the Act – *Standards For Prompt, Fair and Equitable Settlement of Claims Under Fire and Extended Coverage Insurance Policies*, which includes the Plaintiffs' subject Homeowner's Policy, provides that "When an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a reasonably comparable appearance."

20.    Therefore, to conform with Ohio law, and the policy of insurance, State Farm is required to replace Plaintiffs' entire set roof shingles that did not match in quality, color, or size in a reasonably comparable appearance, i.e. State Farm is contractually obligated to replace Plaintiffs' entire roof so the entire set of shingles match.

21.    "Comparable" material and quality have been construed to require that the proposed replacement materials provide an acceptable aesthetic result, including reasonable color match. *See, e.g. Seamon v. Acuity* (Minn. Ct. App.), 2011 WL 6015355; *Trout Brook South Condominium Ass'n v. Harleysville Worcester Insurance Company* (D. Minn. 2014), 995 F. Supp. 2d 1035; *Cedar Bluff Townhome Condominium Ass'n, Inc. v. American Family Mut. Ins. Co.* (Minn. 2014), 857 N.W. 2d 290; *Alesi v. Mid-Century Ins. Co.* (E.D. Mo. 2015), 464 S.W. 3d 529.

22.    The Act, which State Farm expressly adopts as one its contractual duties[3] owed to Plaintiffs and its Ohio insureds, requires State Farm to replace both damaged as well as undamaged property in order to bring the aesthetics of the repaired property into conformity with the undamaged, unrepaired portion of Plaintiffs' home, and preserve the value of the residence as that

---

[3] See the "Conformity to State Law" provision in the State Farm Homeowner Policy of Insurance.

term is defined in the policy of insurance.

23.     However to avoid this obligation, whether it be a matching issue, structural issue, or other property damage issue incurred by a homeowner-insured under a State Farm Homeowner's Policy of Insurance, State Farm employs, contracts and/or utilizes a cadre of bias and outcome-oriented engineers that have a long-standing business and/or financial relationship with State Farm to under-assess and/or under-value policyholder claims; the purpose of which is to provide State Farm with plausible deniability in either denying homeowner insureds property damage claims, in whole or in part, and/or under-assessing and under-valuing homeowner property damage claims. By doing so, State Farm fails to fully indemnify State Farm insureds, such as Plaintiffs herein, as contractually required under the policy(s) of insurance, thereby damaging Plaintiffs and the putative Class Members financially, while concomitantly benefitting State Farm with lower claims costs, and unjustly enriching the cadre of bias and outcome-oriented engineers who provide State Farm with bias and outcome-oriented engineering/damage reports in exchange for volume work that increases their overall gross profits.

24.     When the need for an engineer occurs on a file, after management approval, State Farm employs an engineer selection tool ("EST") that allegedly selects an engineer based on zip code and type of engineer required, i.e. a mechanical or structural engineer. The engineers that are generated out of the EST derive from a list of engineers selected and approve by State Farm only. The State farm insureds have absolutely no choice in the selection of the engineer that State Farm uses to assess the property damage claims.

25.     State Farm is required by its own internal claims policies and guidelines, and it is State Farm's overall claims practices and procedures, to use an engineer that is in the State Farm EST.

COPY

26.     State Farm will not hire, contract with, use or consider evaluations from any engineer, including independent engineers proposed by their insureds, that is not on its EST list.

27.     State farm will pay a claim that requires an engineering/damages assessment, only based upon review of its own contracted engineer generated through its EST.

28.     State Farm refuses to retain independent engineering reports.

29.     State Farm refuses to pay for an "independent" engineering/damages analysis from an engineer that is mutually agreed upon with its insureds.

30.     Because the under-assessment and under-valuing of claims by State Farm's bias and outcome-oriented engineers place its insureds in a financial deficit, State Farm insureds are often forced to engage their own engineer experts, at their own cost, to challenge the State Farm reports, but State Farm pays only the amount authorized by its own bias and outcome-oriented engineer "expert."

31.     While State Farm advises its insureds that they may retain their own engineer to assess the damages, State Farm will neither pay for that engineer, nor consider that engineer's assessment in determining what it will pay to indemnify the insureds under the policy(s). Further, State Farm will not pay for an independent engineer mutually agreed upon through consultation with the insureds. In other words, State Farm refuses its insureds' ability to obtain a truly independent engineering/damages assessment.

32.     State Farm does not advise, warn, instruct, or otherwise inform its insureds that the engineer State Farm provides to evaluate damages at insureds' homes have a business and contractual relationship with State Farm, and are selected out of a preexisting pool of engineers selected by State Farm only.

33.     The engineers elected from State Farm's EST, and their "expert" reports, are

systematically and institutionally used by State farm to deny and/or under-value and under-assess insureds homeowner claims, in favor of State Farm and to the detriment of the insureds.

34.     State Farm enters into a contract and pays its engineers a fee to perform the inspections at its insureds' homes.

35.     Defendant ASI is one of the bias and outcome-oriented "expert" engineers contracted by State Farm, and who does a large volume of work for State Farm in the State of Ohio.

36.     ASI specializes in investigative and forensic services catering to insurance companies and claims adjusters. Upon information and belief, a substantial amount of ASI's services, clients and revenue generation derives from its insurance carrier based clients, such as State Farm.

37.     ASI has had a long-standing business relationship with State Farm in performing engineering/damages assessments on property damage incurred at State Farm's insureds' homes.

38.     Upon information and belief, Defendant ASI receives annual revenue from its contract work through State Farm in excess of $250,000.00.

39.     Upon information and belief, State Farm pays Defendant ASI less than market rates for its "expert" engineering reports in exchange for contracting ASI to a high-volume number of projects/assignment. State Farm then uses these reports against its insureds, such as Plaintiffs herein, as reason and basis for either denying claims in whole or in part and/or indemnifying its insureds for less than the value owed under the policy(s) of insurance. In sum, State Farm uses these biased and outcome-oriented "expert" reports to short its insureds by not paying the full value of the claims covered under the policy(s) of insurance. This also devalues the insureds' policies, because insureds pay full premiums based upon, chiefly, the value of their homes, but

COPY

receive only partial (or no) benefits they are entitled to under the policies.

40.     On or about January 11, 2017 Plaintiffs' home experienced high-wind damage manifesting in substantial damage to Plaintiffs' roof.

41.     The wind damage to Plaintiffs' roof is a covered loss under the insurance policy.

42.     State Farm advised Plaintiffs that it would only repair a portion of Plaintiffs' roof.

43.     The original shingles on Plaintiffs' roof are no longer made and/or available through the manufacturer.

44.     The shingles used in the repair to a portion of Plaintiffs' roof do not match and are aesthetically and objectively different. They are not reasonably comparable as required by the Act.

45.     As a result, Plaintiffs demanded that State Farm replace their entire roof so as to match in accordance with Ohio law. State Farm refused.

46.     Instead, State Farm contracted ASI to issue one of its bias and outcome-oriented reports, which ASI did.

47.     ASI concluded that:

> "It would appear that the dwelling site-lines do not lend easily to viewing more that one roof slope at a given time. No wind damage was observed to the shingles on the west, north, or east facing roof sloped. With this being the case, the color and condition uniformity of the roof shingles is an aesthetic choice, with the shingle color not affecting the water shedding capability of the roofing system."

48.     Accordingly, State Farm only agreed to pay approximately $4,700 to patch repair Plaintiffs' roof, which Plaintiffs have and continue to dispute.

49.     Plaintiffs full roof repair ultimately cost them $8,615.11.

50.     Notably, State Farm failed to advise Plaintiffs, among other things:

12

COPY

a.    That ASI and State Farm have a contractual relationship for ASI's engineering services;

b.    That ASI and State Farm have a preexisting business relationship;

c.    That ASI is not "randomly selected" but is chosen out of State Farm's predetermined EST;

d.    How many times ASI has performed other inspections assessing homeowner claim damages on behalf of State Farm;

e.    The amount of money ASI has been paid by State Farm over the course of time ASI has been a part of State Farm's required EST – thus, not disclosing ASI's pecuniary interests;

f.    The pecuniary discounts ASI provides State Farm in exchange for volume of work;

g.    The percentage of damage reports that were in favor of State Farm versus in favor of its Insureds;

h.    The conflict of interest inherent in ASI's business relationship with State Farm.

### CLASS ACTION ALLEGATIONS

51.    Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further state as follows:

52.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as Members of the proposed Class ("Class") initially defined as:

> **"All State Farm Insureds In The State Of Ohio Who Had Their Property Damage Claims Assessed or Evaluated By An Engineer From State Farm's EST To Determine Their Property Damage Claim During The applicable Period Of Limitations."**

53.    Excluded from the Class are State Farm's employees, officers, directors, legal

13

representatives, successors, and assigns; any entity in which State Farm has a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class. Plaintiffs reserve the right to modify the Class Definition throughout the course of this litigation to conform with the evidence and facts as they develop.

54.     This action has been brought as a class action, and may properly be maintained, pursuant to Rule 23(B)(1), (2) and (3) of Ohio's Rules of Civil Procedure and case law thereunder.

55.     Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. The Class includes thousands of State Farm Insureds within the State of Ohio during the applicable period.

56.     Typicality:   The Plaintiffs' claims are typical of the Class Members' claims. Like other Class Members, Plaintiffs are insureds under a policy of insurance issued by State Farm and suffered injuries as a result of State Farm's requirement that Plaintiffs' use bias outcome-oriented engineers contracted by State Farm to assess monetary and property damage under claim evaluation. State Farm treated Plaintiffs consistently with other Class Members with regard to the policy of insurance, and State Farm's practice and policy to force its insureds to accept the damages evaluation by bias and outcome-oriented engineers contracted by State Farm. State Farm's imprudent, unfair, and unjustified bad faith decisions affected all insureds similarly.

57.     Adequacy:   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and Plaintiffs have retained counsel experienced in complex class action litigation and insurance law. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impeded their ability to represent such Class members.

COPY

58.     Commonality:  Common questions of law and fact exist as to all Class Members

and predominate over any questions solely affecting individual Class Members, including but not

limited to:

a.  Whether State Farm's contracted engineers are bias and outcome-oriented against

Plaintiffs and the Class;

b.  Whether State Farm's contracted engineers systematically under-value or under-

assess Plaintiffs' and the Class Members' property damage claims;

c.  Whether State breached the policy of insurance;

d.  Whether  State  Farm's  decisions  and  actions  were  made  with  reasonable

justification;

e.  Whether State Farm breached its duty to act in good faith;

f.  Whether State Farm's Bad faith is institutional;

g.  Whether ASI was unjustly enriched;

h.  Whether Plaintiffs' and the Class Members' policy is/are devalued by State Farm's

pattern and practice of under-valuing and under-assessing homeowner property

damage claims through the forced use of biased and outcome oriented contract

engineers;

i.  Whether Plaintiffs' and the Class Members suffered damages, such as out-of-

pocket costs and expenses and/or diminution in property value as a result of State

Farm's  pattern  and  practice  of  under-valuing  and  under-assessing  homeowner

property damage claims through the forced use of biased and outcome oriented

contract engineers;

j.  Whether Plaintiffs and Class Members are entitled to injunctive and/or equitable

COPY

relief as a result of Defendants' wrongful conduct;

k.  The proper form of equitable and injunctive relief;

l.  Whether Defendants' wrongful conduct damaged Plaintiffs and Class Members, entitling them to compensation and monetary damages;

m.  The proper form of monetary relief

59.     Class certification is appropriate under Ohio Civ. R. Proc. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

60.     Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(1)(B) because adjudications with respect to individual Class Members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests.

61.     Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(2), because separate and distinct from the damages caused by Defendants wrongful conduct, final injunctive and declaratory class-wide relief is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class.

62.     Class certification is also appropriate under Ohio Civ. R. Proc. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct as described in this Complaint applies uniformly to all Members of the Class. Class Members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class Member's individual

16

COPY

claim is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class Members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interest of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single forum.

### COUNT ONE
### COMMON LAW BREACH OF CONTRACT

1.     Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further states as follows:

2.     Plaintiffs and Defendant State Farm entered into a contract for insurance for, among other things, the protection of the subject property and any covered damages and losses deriving therefrom.

3.     Plaintiffs complied with all terms and conditions precedent for coverage and the terms and conditions of the subject policy and, therefore, were and are entitled to all benefits contracted for under the terms and conditions of the Policy.

4.     Defendant State Farm has refused or failed to abide by and/or comply with its duties owed Plaintiffs under the contract for insurance, and have otherwise breached the contract for insurance as outlined in this Complaint.

5.     As a direct and proximate cause of said breach, Plaintiffs have incurred monetary and other damages in excess of Twenty-Five Thousand Dollars ($25,000.00), subject to escalation and to be more fully ascertained at trial.

COPY

## COUNT TWO
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (BAD FAITH)

6.    Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this Complaint, as if fully rewritten herein, and further state as follows:

7.    Ohio law recognizes the independent tort of bad faith in the context of the insured/insurer relationship.

8.    Defendant State Farm's conduct has breached the implied covenant of good faith and fair dealing implicit to the policy of insurance.

9.    Ohio law provides that an insurer's lack of good faith is equivalent to bad faith.

10.    Plaintiffs and the Class Members are all insureds of State Farm.

11.    Defendant State Farm failed and refused to make an adequate investigation or any investigation regarding Plaintiffs' claims which, among other things, has caused a severe delay in full indemnification of Plaintiffs' and Class Members' claims and providing all benefits that Plaintiffs and Class Members are entitled to under the policy(s), which has severely prejudiced and damaged the Plaintiffs and Class Members, and has further resulted in Defendant State Farm withholding all recoverable benefits due under the policy.

12.    Defendant State Farm refused and continues to refuse to give any reasonable interpretation to the provisions in the policy of insurance or any reasonable application of such provisions to Plaintiffs' and Class Members' claims and have acted to protect its own financial interests therein at the expense of Plaintiffs' and Class Members' rights. Defendant State Farm will not even review, let alone accept, Plaintiffs' and Class Members' work estimates and professional documents from sources independent of State Farm's bias and outcome-oriented contract engineers, as an assessment and evaluation of property damage, and what is due and owing

18

COPY

under the policy of insurance.

13. Defendant State Farm fails to provide Plaintiffs and Class Members any reasonable or justifiable basis for requiring Plaintiffs to use State Farm's bias and outcome-oriented contract engineers to investigate, handle, adjust, process, and indemnify Plaintiffs' and Class Members' claims in relation to the insurance policy, the facts surrounding Plaintiffs' and Class Members' claims, or applicable law. Defendant State Farm will not even consider competing investigations, estimates, or quotes from non-State Farm contracted engineers used through its EST.

14. Defendant State Farm mispresents to Plaintiffs and the Class Members that its bias and outcome-oriented engineers are "credentialed" and "vetted."

15. Defendant State Farm misrepresents to Plaintiffs and the Class Members that its bias and outcome-oriented engineers provide an "independent" assessment of structure damages and recommended repairs.

16. Defendant State Farm mispresents to Plaintiffs and the Class Members that its bias and outcome-oriented engineers are randomly assigned to the plaintiffs' and Class Members' claim.

17. Defendant State Farm, knowing that Plaintiffs' were incompetent and unable to act to protect their interest, that such benefits were justly due, and that such benefits were necessary to pay Plaintiffs' and Class Members necessities of their use of the Premises, nevertheless have deprived Plaintiffs of such benefits.

18. Defendant State Farm uses the "expert" engineer reports from the engineers in their EST to purposely under-value and under-assess Plaintiffs' and Class Members' property damage claims.

19. Defendant State Farm's refusal to properly investigate, adjust, handle, process

COPY

and/or pay benefits due Plaintiffs compelled Plaintiffs to, among other things, engage counsel and to initiate litigation to recover such benefits.

20.     Plaintiffs are informed and believe and thereon allege that Defendant State Farm intends to and will continue to delay, deny, and withhold in bad faith benefits due Plaintiffs unless and until compelled to pay such benefits by final judgment of this Court.

21.     As a direct and proximate result of the conduct of Defendant State Farm, Plaintiffs and Class Members have sustained substantial compensable losses, including benefits withheld, and economic losses, such as attorney's fees, out of pocket expenses, loss of use of the Premises, diminution in property value, personal property loss, out-of-pocket costs and expenses, diminution in value of the insurance policy, and have suffered embarrassment and humiliation and severe mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage in amounts not fully ascertained, but in excess of $25,000, and within the jurisdiction of this Court. When such sums have been ascertained, Plaintiffs will amend this complaint accordingly or according to proof.

22.     Further, at all material times and in doing things alleged herein, Defendant State Farm acted oppressively, maliciously and with a conscious disregard of Plaintiffs' and Class Members' rights, with the intention of benefitting Defendant State Farm financially and with the intention of causing or recklessly disregarding the probability of causing, injury and emotional distress to Plaintiffs and Class Members, Defendant State Farm has refused and continues to refuse to pay all benefits due Plaintiffs and Class Members and, further, has unjustifiably and/or intentionally failed to properly investigate, adjust, process and handle Plaintiffs' claims resulting in a significant and unjustifiable delay in resolving Plaintiffs' and Class Members' claims under the terms and conditions of the policy of insurance. In so doing, Defendant State Farm did vex,

COPY

annoy, injure, and harass Plaintiffs so as to justify the assessment of punitive and exemplary damages against Defendant.

**COUNT THREE**
**UNJUST ENRICHMENT**
**ASI**

23.     Plaintiffs hereby restate the allegations and averments contained in the preceding paragraphs of this complaint, as if fully rewritten herein, and further states as follows:

24.     By collecting payment from State Farm for bias and outcome-oriented engineering reports designed to under-assess and under-value the Plaintiffs' and Class Members' property damage, thus causing damages to Plaintiffs and the Class Members in the form of, among other things, diluted claim value, diminution in value of property, and out-of-pocket expenses to make up for the inadequate benefits paid out under the State Farm insurance policy; a benefit was conferred on Defendant ASI, and ASI was and is aware of such benefit.

25.     In justice and equity, Plaintiffs and Class Members are entitled to any payments made to and retained by Defendant ASI related to its bias and outcome-oriented engineering reports designed to under-assess and under-value the Plaintiffs' and Class Members' property damage.

26. Defendant ASI's actions leading to and involving its unjust enrichment is and was done with malice, recklessness, and in bad faith.

27.     Because Defendant ASI has no right to the payments collected for its bias and outcome-oriented engineering reports designed to under-assess and under-value the Plaintiffs' and Class Members' property damage, it would be inequitable and unconscionable to allow Defendant ASI to retain such funds. Thus, Defendant ASI should be required to disgorge any and all funds, profits, and/or remuneration it has unjustly received as a result of its actions as alleged

COPY

herein.

28.    As a direct and proximate result of Defendant ASI's actions, Plaintiffs have suffered damages in excess of Twenty-Five Thousand Dollars ($25,000.00), to be determined more precisely at trial.

**WHEREFORE,** Plaintiffs respectfully requests of this Court the following relief, on behalf of themselves and all others similarly situated:

a.    An Order certifying the proposed Class herein pursuant to Rule 23(B)(1), (2), and (3) of the Ohio Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the class;

b.    An Order awarding Plaintiffs and Class Members damages resulting from Defendants' wrongful conduct in excess of $25,000.00;

c.    Restitution and reimbursement of all moneys paid by Plaintiffs and Class Members because of Defendants' wrongful conduct;

d.    An Order of Declaratory and injunctive relief;

e.    Disgorgement by ASI of all profits and compensation emanating from their unjust enrichment;

f.    An award of any additional, consequential, and incidental damages and costs suffered by Plaintiffs and Class Members because of Defendants' wrongful conduct;

g.    Punitive damages;

h.    Pre-judgment and post-judgment interest;

i.    Plaintiff's costs of suit, including, without limitation, their attorney's fees, expert fees, and actual incurred and costs; and

j.    Such other further relief, at law or in equity, as the Court deems just and proper.

## JURY DEMAND

Pursuant to Ohio Civil Rule 38, Plaintiff requests a jury trial of all issues alleged herein.

**COPY**

Respectfully submitted,

Thomas J. Connick (0070527)
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Cleveland OH 44122
PH: 216-364-0512 | FX: 216-609-3446
Email: tconnick@connicklawllc.com